# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 3:10-bk-02088-JAF |
| SCHUCK-BAYMEADOWS, LLC, | ) | Chapter 11 |
| Debtor. | ) | |
| _____ | ) | |

## WELLS FARGO'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Wells Fargo Bank, N.A., as trustee ("Wells Fargo"), a secured creditor,[1] moves for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) because this Chapter 11 case was filed in bad faith.

### Summary of Motion

All of the factors for a bad faith filing set forth in *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988), are present in this case:

1. the Debtor, a Delaware LLC, has only one asset -- an undivided 35.24580 percent interest in commercial rental property (the "Property") which it owns with two other non-debtor LLCs (the "Borrowers") as tenants in common;

2. the Debtor has few (if any) unsecured creditors whose claims are relatively small compared to the secured claim of Wells Fargo;

3. the Debtor has few (if any) employees;

---

[1] The secured lender in this case is Wells Fargo Bank, N.A., as Trustee of the Registered Holders of TIAA Seasoned Commercial Mortgage Trust 2007-C4, Commercial Mortgage Pass-Through Certificates, Series 2007-C4 by: Centerline Servicing Inc., solely in its capacity as special servicer pursuant to a Pooling and Servicing Agreement, dated July 11, 2007.

4. the Property is subject to a foreclosure action presently pending in the Circuit Court, Fourth Judicial Circuit, Duval County, Florida, as a result of arrearages on the debt;

5. the Debtor's financial problems essentially arise from a dispute between the Borrowers and Wells Fargo which can be resolved in the pending State Court action; and

6. the timing of the Debtor's filing evidences an intent to delay and frustrate the legitimate efforts of Wells Fargo to enforce its rights.

In addition to these classic elements of bad faith, the Debtor has engaged in egregious conduct which has delayed and frustrated the legitimate efforts of Wells Fargo to enforce its rights to the Property and the rents including:

a. the implementation of an ill-advised scheme by which mortgage payments were stopped and rents were diverted by the Borrowers to themselves in an attempt to bring "pressure" on Wells Fargo to respond to a bogus claim being asserted by the Borrowers regarding a "reserve issue"; and

b. the implementation of another scheme which abused the judicial process -- after Wells Fargo commenced its foreclosure action against this Property and the rents on November 20, 2009, the Borrowers entered into an Agreed Order in State Court on January 8, 2010, regarding the sequestration of the rents and other terms which the Debtor blatantly ignored. Instead, the Debtor used the false promises it made in the Agreed Order as a delaying tactic during which it diverted $173,000.00 of rents for payment of its attorneys prior to the commencement of this Chapter 11 case on March 2, 2010.

This case presents a blatant example of a bad faith filing and equity requires relief from the automatic stay.

## Facts
### The Secured Debt

1. The Debtor owns an undivided 35.24580 percent interest in the Property as a tenant in common with Goldberg-Baymeadows LLC, and Villa Sangria-Baymeadows LLC (collectively, the "Borrowers"). The Property includes commercial real estate with multiple units leased as office space and for other commercial uses.

2. As of the petition date, the Borrowers, including Debtor, are jointly and severally indebted to Wells Fargo in the principal amount of $8,009,051.52 plus interest, costs, attorneys' fees and other charges under a Mortgage, Assignment, Note and Assumption Agreement (the "Loan Documents").

3. Pursuant to the Loan Documents, this indebtedness is secured by a lien on the Property and the rents derived from leases on the Property (the "Cash Collateral").

### Events Prior to the Chapter 11 Filing

4. Prior to November 10, 2008, legal title to the Property was held by the Borrowers (sometimes referred to as the "Tenants in Common" or "TICS") and the Property was operated by DBSI Master Lease Co., Inc. ("DBSI" or "Master Tenant") pursuant to a Master Tenant Lease Agreement.

5. On November 10, 2008, DBSI filed a voluntary petition under Chapter 11 of Title 11 of the United State Code. DBSI rejected its duties and obligations under its Master Lease Agreement as to the Property pursuant to a Bankruptcy Court order dated February 10, 2009.

6. In February 2009, as a result of the DBSI Chapter 11 case, the Borrowers took over the active management of the Property and, from February through July, 2009, made the requisite monthly mortgage payments due Wells Fargo under the Loan Documents.

7. Beginning on or about February 22, 2009, the Borrowers began making demands on Wells Fargo to release funds from a non-existent capital reserve account which the Borrowers apparently thought had been funded by DBSI in connection with a 2005 loan closing with DBSI. Wells Fargo repeatedly explained to the Borrowers that it held no such capital reserve account and it had no evidence that DBSI ever funded the account. The Borrowers, however, not able or willing to recognize these plain facts, continued to complain that Wells Fargo was either mistaken or somehow responsible for the failure of DBSI to fund the capital improvement reserve in 2005.

8. In August 2009, the Borrowers implemented an ill-advised litigation scheme to stop paying Wells Fargo the monthly mortgage payments due under the Loan Documents in an effort to pressure Wells Fargo to "address the reserve issue." As a result:

(a) in correspondence dated August 1, 2009, the Borrowers instructed the property manager (Peter Klaase of Colliers Arnold Management) not to pay Wells Fargo "the August 2009 mortgage payment until we tell you" (Exhibit 1); and

(b) again, in correspondence dated September 16, 2009, the property manager was instructed by the Borrowers not to make any mortgage payments until instructed to do so because "we sent [Wells Fargo] a letter alerting them that

4

we would not pay the mortgage until they had addressed the reserve issue" (Exhibit 2).

9. Between September and November, 2009, the Borrowers diverted the rents normally used to pay the monthly mortgage payments to Wells Fargo and, instead, paid $122,000 to themselves for "advances" they allegedly made to pay for improvements to the Property. This scheme to divert rents is further evidenced by September 16, 2009, correspondence in which the Borrowers instructed the property manager not to pay the mortgage payments and, instead, to use rentals to make payments to each of the Borrowers in September, October and November 2009 (Exhibit 2).

10. On October 5, 2009, Wells Fargo declared a default under the Loan Documents, accelerated the indebtedness and made a demand on the rents pursuant to § 697.07, Florida Statutes (Exhibit 3).

11. Notwithstanding Wells Fargo's demand for rents on October 5, 2009, the Borrowers continued to divert the rents to pay themselves monies which they perceived were owed to themselves as "advances." Copies of checks dated October 8, 2009 and November 6, 2009 evidencing this diversion of rents are attached as Exhibit 4.

12. Even after the Borrowers paid themselves $122,000.00, and in the apparent furtherance of their plan to "pressure" Wells Fargo, the Borrowers continued to divert the rents into a "separate" account rather than paying Wells Fargo the mortgage payments due under the Loan Documents. Specifically, in correspondence from the Borrowers to the property manager dated September 16, 2009, the property manager was instructed:

> In December, the entire $63,170 should be put in this [impound] account. A separate account should be established, perhaps an escrow account, where the impound fees and excess mortgage payment money will be put pending a settlement with the Lender.

Exhibit 2.

### The State Court Litigation

13. On November 20, 2009, Wells Fargo commenced an action against the Borrowers in State Court to foreclose its lien rights against the Property, including the collected and future rents. The State Court Action is pending as *Wells Fargo Bank, N.A., as Trustee, etc. v. Shuck-Baymeadows, et al.*, Fourth Judicial Circuit, Duval County, Florida, Case No. 16-2009-CA-017878.

14. On November 20, 2009, Wells Fargo filed a motion in the State Court to enforce its rights to the Assignment of Rents and Alternative Motion to Appoint Receiver (Exhibit 5).

15. On December 7, 2009, Wells Fargo filed a request for an expedited hearing on its Motion to Enforce Assignment of Rents and Alternative Motion to Appoint Receiver (Exhibit 6).

16. At the expedited hearing held on December 14, 2009, the state court entered an order directing the parties to mediation (Exhibit 7).

17. As a result of the mediation, Wells Fargo and the Borrowers, including the Debtor, entered into a Stipulation Regarding Plaintiff's Motion to Enforce Assignment of Rents and Alternative Motion to Appoint Receiver (the "Stipulation"). In the Stipulation, the Borrowers agreed that they would comply, as of January 8, 2010, with the provisions of the proposed Order Granting Plaintiff's Motion to Enforce Assignment of Rents

attached to the stipulation (the "Agreed Order"). The Agreed Order was entered by the State Court on January 8, 2010 (Exhibit 8).

18. The Agreed Order required the Borrowers, among other things, to:

(a) file with the State Court, within 5 business days of January 8, 2010, an accounting for the receipt and use of all collected rents on and after October 5, 2009;

(b) file with the State Court, within 5 business days, a proposed monthly budget showing those expenses which are reasonably necessary for the care, maintenance, preservation and continuing operation of the Property, including the monthly mortgage payments to Wells Fargo in the amount of $63,170.49 each (including January and February 2010 mortgage payments), pending the determination of the State Court litigation; and

(c) deposit all rents and profits from the Property, in excess of approved budgeted expenses, into the Depository which had been designated by the State Court.

19. The Agreed Order further provided that, if the Borrowers failed to comply with its terms, Wells Fargo shall be entitled to the immediate appointment of a receiver.

20. The Borrowers failed to comply with the Agreed Order in that:

(a) the Borrowers failed to file *any* accounting with the State Court regarding the receipt and use of collected rents;

(b) the Borrowers failed to file *any* budget with the State Court;

(c) the Borrowers failed to pay Wells Fargo *any* of the monthly mortgage payments due for January and February, 2010; and

(d) the Borrowers failed to sequester *any* rents.

**21. Instead, on and after January 8, 2010, without the knowledge or consent of Wells Fargo or the State Court, and in direct violation of the Agreed Order and Stipulation, the Borrowers improperly diverted rents in the amount of $173,000.00 for payment to their attorneys for past and future legal services.** These transfers are evidenced by the Borrowers' Journal Entry Register showing a transfer of $100,000.00 from the Borrowers' operations to escrow on January 8 – the effective date of the Stipulation – and subsequent "owner distribution" of $173,000.00 on January 22, 2010 (which the Borrowers now assert have been used for payment of past and future legal services) (Exhibit 9).

22. On February 26, 2010, Wells Fargo filed a motion to appoint a receiver of the Property to take control of the rents due to Borrowers' failure to comply with the terms of the Agreed Order (Exhibit 10). A hearing on the Motion to Appoint a Receiver was scheduled to be heard on March 3, 2010 (Exhibit 11).

23. On March 2, 2010, one day before a hearing scheduled in State Court on the motion to appoint a receiver, one of the Borrowers, Goldberg-Baymeadows, LLC, filed a Chapter 11 case. The Debtor filed this Chapter 11 case on March 16, 2010, only 5 days after Wells Fargo informed the Bankruptcy Court that the Goldberg-Baymeadows Chapter 11 case could not impair the rights of Wells Fargo to collect rents from the Property owned by the non-debtor Borrowers, including the Debtor and Villa Sangria-Baymeadows, LLC.

### "Cause" to Lift the Stay: Bad Faith Filing

A Chapter 11 case filed in bad faith and for the purpose of hindering a secured

creditor from exercising its legitimate rights to resort to the collateral securing the loan constitutes "cause" to lift the stay under Section 362(d)(1) of the Bankruptcy Code. *See Phoenix Piccadilly,* 849 F.2d at 1394; *In re Int'l Supply Corp. of Tampa, Inc.,* 72 B.R. 510, 511 (Bankr. M.D. Fla. 1987) (there was "hardly any doubt" that the petition was filed to frustrate the lender's rights under a stipulation entered in a state court foreclosure proceeding, and thus sufficient cause existed to lift the automatic stay).

There is no particular test for determining whether a debtor has filed a petition in bad faith. *Phoenix Piccadilly,* 849 F.2d at 1394; *Acquisition Corp. v. FSLIC,* 96 B.R. 380, 384 (S.D.Fla. 1988). Rather, the court may consider any factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" and, in particular, factors which evidence that the petition was filed to "delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *Phoenix Piccadilly,* 849 F.2d at 1394; *Acquisition Corp.,* 96 B.R. at 384.

The following factors have been used to determine whether a bankruptcy petition was filed in bad faith:

    (i)    Is there a realistic possibility of an effective reorganization?

    (ii)    Does the debtor only possess a few assets?

    (iii)    Does the debtor only have a few unsecured creditors whose claims are small in relation to the claims of secured creditors?

    (iv)    Does the debtor have few employees?

    (v)    Is the Debtor's property subject to a foreclosure action as a result of arrearages on the debt?

(vi) Do the Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in a pending State Court Action?

(vii) Is the timing of the Debtor's filing evidence of an intent to delay or frustrate the legitimate efforts of the Debtor's Secured Creditors to enforce their rights?

*Phoenix Piccadilly,* 849 F.2d at 1394-95; *Acquisition Corp.*, 96 B.R. at 384. This list of factors is not exhaustive; nor is there any single factor that will conclusively establish bad faith. *Acquisition Corp.*, 96 B.R. at 384.

Applying each of these factors to this case, it is obvious that this case was filed in bad faith:

(i) The Debtor has only one asset – an undivided 35.24580 percent interest in the Property.

(ii) The Debtor has few, if any, other creditors. The claims of any other creditors would be small in relation to the claim of Wells Fargo.

(iii) The Debtor has no employees.

(iv) The Debtor's property is the subject of a foreclosure action as a result of arrearages on the debt.

(v) The Debtor's financial problems involve essentially a dispute between it and Wells Fargo which can be resolved in the pending State Court Action.

(vi) The timing of the Debtor's filing evidences an intent to delay and frustrate Wells Fargo's legitimate efforts to enforce its rights through the State

10

Court Action. Specifically, this Debtor (i) consented to the filing of the Chapter 11 case by Goldberg-Baymeadows, Debtor's co-owner, the day before the hearing in connection with the Wells Fargo's motion to appoint a receiver and (ii) filed its own Chapter 11 case 14 days later, on March 16, 2010, only 5 days after Wells Fargo informed the Bankruptcy Court that Goldberg-Baymeadows Chapter 11 case cannot impair the rights of Wells Fargo to collect rents from the Property owned by the non-debtor Borrowers.

In summary, the Debtor's bad faith conduct began in August 2009, when the Debtor took an ill-advised litigation risk and implemented its scheme to withhold the mortgage payments due Wells Fargo to bring pressure on Wells Fargo to respond to its demands on the "reserve issue." Rather than acquiesce to the Debtor's "pressure," Wells Fargo commenced the State Court Action.

After the State Court Action was commenced, the Debtor implemented another ill-advised litigation scheme which included the abuse of the litigation process -- the Debtor again delayed and frustrated the legitimate efforts of Wells Fargo to enforce its rights to the Property and the rents by entering into an Agreed Order in State Court on January 8, 2010 regarding the sequestration of rents and other terms which the Debtor blatantly ignored. Instead, the Debtor used the false promises it made in the Agreed Order as a delaying tactic during which it diverted $173,000.00 of rents for payment to its attorneys prior to the commencement of this case on March 2, 2010. This Chapter 11 case was effectively filed one day before the scheduled hearing on Wells Fargo's motion to appoint a receiver.

This is not the conduct of an unfortunate debtor invoking the provisions of the Bankruptcy Code in an earnest effort to reorganize its business -- it is an attempt by the Debtor to abuse and misuse the State Court and the Bankruptcy Court to frustrate the legitimate efforts of Wells Fargo to enforce its rights. *See Int'l Supply Corp.*, 72 B.R. at 511.

WHEREFORE, Wells Fargo respectfully requests the Court to enter an order granting it relief from the automatic stay to enforce its rights against the Property and the Borrowers in the State Court Action and to grant such other relief as the Court deems just and proper.

SMITH HULSEY AND BUSEY

By   *s/ James H. Post*
    James H. Post
    Leanne McKnight Prendergast

Florida Bar Number 175460
Florida Bar Number 59544
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)

Attorneys for Wells Fargo Bank, N.A., as trustee

**Certificate of Service**

I certify that a copy of the foregoing was furnished by mail to Schuck-Baymeadows, LLC, 358 Eagle Summit, Rexburg, Idaho, 83440; Jason B. Burnett, Esq., GrayRobinson, P.A., 50 North Laura Street, Suite 1100, Jacksonville, Florida 32202; United States Trustee, 135 West Central Boulevard, Suite 620, Orlando, Florida 32801; and the parties on the attached Rule 1007(d) Parties in Interest list, this 18th day of March, 2010.

                                             *s/ James H. Post*
                                                    Attorney

695884